# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PLANVIEW, INC., )
)
    Plaintiff, )    Case No.
)
    v. )    Jury Demand
)    Judge
GALILEO INTERNATIONAL, L.L.C., )
)
    Defendant. )

## PLAINTIFF'S ORIGINAL COMPLAINT

    PlanView, Inc. ("PlanView") files this Original Complaint and shows the following:

### PARTIES

    1.    Plaintiff PlanView is a Texas corporation with its principal place of business at 7320 North Mopac, Suite 312, Austin, Williamson County, Texas 78731.

    2.    Defendant Galileo International, L.L.C. ("Galileo") is a Delaware corporation with its principal place of business at 9700 West Higgins Road, Suite 400, Rosemont, Cook County, Illinois 60018. Galileo's registered agent for service of process in Illinois is CT Corporation System, 208 South LaSalle Street, Chicago, Illinois 60604.

### JURISDICTION AND VENUE

    3.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

    4.    Venue in the District is proper because Galileo maintains its principal place of business in Illinois and because the Turnkey Agreement for the Supply of a Project and Resource Management Software System executed between the parties requires the parties to submit to the venue of the federal or state courts located within Cook County, Illinois.

## BACKGROUND FACTS

5.     Plaintiff PlanView is a Texas corporation that provides software and services that allow its customers to manage its workforce and projects.

6.     On or about April 6, 1999, PlanView received a Request for Proposal from Galileo regarding Galileo's desire to purchase an enterprise-wide project and resource management system.

7.     On or about April 30, 1999, PlanView completed Galileo's Request for Proposal and based its responses on the functionality of version 5.3 of PlanView's software, PlanView's client-server product.

8.     Shortly thereafter, Galileo contacted PlanView and requested a product demonstration.  On or about May 18, 1999, several PlanView employees traveled to Galileo's Colorado office and performed a demonstration of PlanView's 5.3 product.  The presentation and functionality of version 5.3 were well-received by Galileo.

9.     On or about May 26, 1999, to further accommodate Galileo, PlanView arranged for Galileo to conduct a site visit at the office of one of PlanView's largest customers.  During the site visit, Galileo witnessed the functionality and capabilities of version 5.3 in a live client environment.

10.     Following the site visit, Galileo, in June of 1999, visited PlanView's office in Austin, Texas to discuss Galileo's business needs and the implementation process of version 5.3. Galileo made it clear that version 5.3 met all its requirements, and would meet all of its software needs.

11.     On or about August 26, 1999, Galileo and PlanView executed a Turnkey Agreement for the Supply of a Project and Resource Management Software System (hereinafter "Agreement", and attached hereto as Exhibit A).  Pursuant to the Agreement, PlanView agreed to

provide version 5.3 of its software and related services, and, in return, Galileo agreed to pay PlanView $576,104, plus travel and living expenses and $73,360 for second-year maintenance for version 5.3.

12.     In late September 1999, Galileo contacted PlanView stating its desire to switch from PlanView's client server product, version 5.3, to PlanView's new web-based software, version 6.0. Attempting to dissuade Galileo from switching, PlanView informed Galileo that although it had recently released its first version 6.0, much of the functionality existing in version 5.3 had not been developed and finalized in version 6.0. Therefore, version 6.0 would not satisfy many of the requirements expressed in Galileo's Request for Proposal. Nevertheless, Galileo insisted on switching and having a web-based product, even though they knew that version 6.0 lacked certain functionality. After frequent and consistent requests, and seeking to please its customer, PlanView agreed to accommodate Galileo and implement version 6.0.

13.     On or about October 7, 1999, PlanView installed version 6.0A at Galileo's office in Englewood, Colorado. Three weeks later, on or around November 1, 1999, PlanView installed its latest release of its web-based product, version 6.0B. Shortly after the installation of 6.0B, Galileo began complaining about the very lack of functionality that PlanView had warned it about. PlanView again informed Galileo that version 6.0 was still in the developmental process with regard to certain functionalities and that 6.0 was constantly being refined as a new software release. PlanView suggested that Galileo install version 5.3, as they had agreed to. Despite being reminded yet again that 5.3 undoubtedly had the functionality that Galileo desired and had contracted for, Galileo chose to push forward with version 6.0.

14.     PlanView personnel worked around the clock to develop, install, and implement version 6.0 to the satisfaction of Galileo. However, Galileo began imposing unreasonable time deadlines and continued to complain about the lack of functionality and development of version

6.0. These complaints never raised new issues, but instead, were over limitations and functionality that PlanView had disclosed repeatedly.

15.     Without justification or warning, Galileo ceased communications with PlanView. Still, PlanView continued to provide services as it remained committed to the project. When PlanView inquired into the lack of communication and requested payment for over $500,000 in past due invoices, Galileo responded, on or about January 13, 2000, with a notice of default and intent to terminate the Agreement letter.

16.     PlanView once again urged Galileo to implement version 5.3, as it contracted to do; however, it was to no avail. Galileo without justification terminated the Agreement on February 10, 2000.

17.     Despite the fact that PlanView has completed all obligations and conditions precedent to the contract with Galileo, and has provided Galileo with invoices for software and services rendered, Galileo has failed to pay PlanView what it owes.

18.     To date, Galileo has failed to pay $535,771.41 due and owing under the Agreement, plus interest on the overdue amount as defined by the Agreement.

19.     Additionally, during the period of implementation, Galileo began raising concerns about the "What-If" feature in version 6.0. Although the "What-If" feature was present and developed in version 5.3, this feature was still in the developmental process in version 6.0. At Galileo's insistence, PlanView sent Galileo an internal work-in-process document describing the functionality being reviewed and included in the "What-If" specification, design, and analysis for version 6.0.

20.     In direct violation of the Agreement, Galileo disclosed the contents of this internal documents to the Gartner Group, the leading industry analyst for resource management software,

and informed them that the "What-If" feature in version 6.0 would be lacking compared to version 5.3.

21.     PlanView has performed all of its obligations under the Agreement.

## COUNT I

### (Breach of Contract)

22.     Paragraph 1-21 are incorporated here by reference.

23.     Galileo's conduct described above, including its refusal to pay all amounts due under the Agreement, constitutes a breach of the Agreement.

24.     As a direct and proximate result of Galileo's breach of the Agreement, PlanView has suffered substantial injury and damages.

## COUNT II

### (Quantum Meruit)

25.     Paragraphs 1-24 are incorporated here by reference.

26.     Alternatively, if PlanView is not permitted to recover under the Agreement, it is entitled to recover under the doctrine of quantum meruit. PlanView provided its valuable software and services to Galileo. Galileo received and accepted PlanView's software and services with the knowledge that PlanView expected to be paid and/or compensated for its software and services. Galileo benefited by way of receiving PlanView's software and services.

## COUNT III

### (Breach of Confidentiality Provision of Contract)

27.     Paragraphs 1-27 are incorporated by reference.

28.     Galileo's conduct described above, including the disclosure to the Gartner Group of functionality and confidential development of PlanView's software, constitutes a breach of the confidentiality provision of the Agreement.

29.     As a direct and proximate result of Galileo's breach of the confidentiality provision, PlanView has suffered substantial injury and damages.

### PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff PlanView, Inc., requests that Galileo International, L.L.C. be cited to appear and answer, and that the Court award PlanView judgment against Galileo for the following:

1.     All actual damages supported by the evidence;

2.     Plaintiff's reasonable attorneys' fees;

3.     Pre-judgment interest on all sums awarded at the maximum rates allowed by law;

4.     Post-judgment interest on all sums amended at the maximum rated allowed by law;

5.     Plaintiff's costs of suit; and

6.     Such other and further relief, both in law and in equity, to which Plaintiff may be justly entitled.

_____
One of the Attorneys for Plaintiff

| | |
|---|---|
| Patrick J. Lamb | Austin P. Tighe, Jr. |
| Catherine E. Lamsens | J. Davis Watson |
| Butler Rubin Saltarelli & Boyd | Brobeck Phleger & Harrison LLP |
| Three First National Plaza | 4801 Plaza on the Lake |
| 70 West Madison Street, Suite 1800 | Austin, Texas  78746 |
| Chicago, Illinois  60602 | |

W:\P\PLANVIEW\PLEADINGS\Plaintiff's Original Complaint 2.doc

# EXHIBIT A

Galileo International Contract No. US993514-EH

DATED

| | | |
|---|---|---|
| (1) | The Contractor | **PlanView, Incorporated** |
| (2) | The Customer | **Galileo International, L.L.C.** |

# TURNKEY AGREEMENT

# FOR THE SUPPLY OF A

# PROJECT AND RESOURCE MANAGEMENT SOFTWARE SYSTEM

**EXHIBIT A**

1

GALILEO AGREEMENT #US993514-EH

## TURNKEY AGREEMENT FOR THE SUPPLY OF
## A PROJECT AND RESOURCE MANAGEMENT SOFTWARE SYSTEM

THIS AGREEMENT is made the10th day of August, 1999.

BETWEEN

**Galileo International, L.L.C.**, a limited liability company organized in the State of Delaware, USA, and having its registered office at 9700 West Higgins Road, Suite 400, Rosemont, Illinois 60018, USA ( "Galileo")

AND

PlanView, Inc., a Texas corporation, with its principal offices at 7320 North Mopac, Suite 312, Austin, Texas 78731(the "Contractor")

**Recitals:**

WHEREAS:

A.   The Contractor is engaged in selling, supplying, developing, installing, testing, maintaining and supporting project and resource management software systems and has the skill, expertise and knowledge with respect to such systems to enable the Contractor to advise Galileo of the best system suitable to Galileo's requirements.

B.   Subject to this agreement, Contractor will supply to Galileo:
    (i)   project and resource management software suitable to Galileo's requirements as specified in the Statement of Work attached hereto as Exhibit A; and
    (ii)   Services specified in the Statement of Work attached hereto as Exhibit A

## 1.   Definitions

In this Agreement the following terms have the following meanings:

"Agreement"   means this agreement between the Contractor and Galileo International, L.L.C. including the PlanView Schedule A; Exhibit A – Statement of Work; Exhibit B – PlanView Software License Agreement; Exhibit C – PlanView System Support Agreement and Exhibit D – Training and Exhibit E - Escrow Agreement attached hereto which may be or are agreed by the parties to form part of this Agreement.

"Services"   means the Software customization, installation, integration, support, and maintenance services and the implementation, training, consultancy, warranty, support, maintenance, and project management services relating to the project all as the same is to be supplied by the Contractor to satisfy Galileo's requirements as generally described in the Statement of Work.

GALILEO AGREEMENT #US993514-EH

"Location(s)"    means the Galileo offices at 5350 Valentia Way or such other location as may be notified by Galileo to the Contractor in writing.

"Software"    means the software program(s), manuals and other documentation, selected by Contractor to satisfy Galileo requirements.

"Software Licence(s)"    means the licence(s) granted to Galileo for the right to use the Contractor's own software and the licence(s) granted to Galileo for the right to use any third party software comprising the Software.

"Bespoke Software"    means the software program(s), interfaces, manuals and other documentation, written by the Contractor for Galileo, specified in the Exhibit A which shall fulfil Galileo's requirements. The copyright in the Bespoke Software shall belong to Galileo.

"Timetable"    means the time duration and period for performance of the obligations of the Contractor under this Agreement included in the Exhibit A, hereto.

"Acceptance" or
"Accepted"    means acceptance and acceptance testing of the whole Software (including Bespoke Software) by Galileo as evidenced by the signing by Galileo of an acceptance certificate or writing.

"Escrow Agreement"    means the agreement between Galileo, the escrow agent and the Contractor with the terms specified in the Exhibit D, Escrow Agreement.

## 2. Application of Terms

These terms and conditions shall apply to all dealings between the Contractor and Galileo, unless amended in a duly authorised writing signed by both parties.

## 3. Commencement

The date of commencement of this Agreement shall be the last date of the signing of this Agreement by either the Contractor or Galileo.

## 4. Galileo International, L.L.C.'s Requirements and Selection of Software:

Upon execution of this Agreement the Contractor is responsible for:
   (a)   supplying the proper Software and ensuring the execution of the Software Licence
   (b)   assisting in developing the specifications for the Bespoke Software for Galileo in accordance with the Exhibit A hereto and assisting in the development of the same;
       (i)   assisting in testing the Software before acceptance and delivery to Galileo's location(s);

    (ii)   providing the Services to Galileo..

5.    **Delivery Installation and Acceptance Testing**

(a)    Upon completion of the Contractor's obligations in Clause 4(a) and (b) above in accordance with the Exhibits, the Contractor and the Galileo shall agree on a date for delivery and installation of the software (or a component thereof, as applicable). Delivery of the software shall include a copy of the object code, software listings and all other information (on CD) relating to the Bespoke Software. It shall also include delivery into escrow of such code, listings and information for the Contractor's and third party software included in the Software in accordance with the terms of the Escrow Agreement.

(b)    Following installation of the Software (or a component thereof) by Galileo and the Contractor, both parties shall run tests sufficiently rigorous to prove the Software to Galileo's satisfaction.

(c)    Upon successful completion of the acceptance testing of the Software to Galileo's entire satisfaction (of which Galileo shall be the sole judge) and delivery of any amendments required to the Bespoke Software source code, or the Contractor's source code, or the third party software into escrow all as specified in Clause 5(a) above, Galileo shall sign the Acceptance Certificate.

(d)    If during the acceptance testing period Contractor fails to fulfil it's responsibilities as outlined in Exhibit A – Statement of Work, Galileo shall notify Contractor in writing of said failure. Further, if during the acceptance period the Software does not function as described in the Request for Proposal prepared and submitted by Contractor, or as represented in the various presentations and demonstrations held for Galileo, Galileo shall notify Contractor in writing of said failure. Upon receipt of written notice by Contractor, Contractor shall have 30 days, or an additional time agreed to by Galileo, to correct said condition. If Contractor is unable to correct the failure in the stated time period, Contractor shall at Galileo's request, terminate this agreement and refund the License fees paid, all unused services and prorated maintenance.

6.    **Professional Fees**

A.    For performance pursuant to the terms of this Agreement, Galileo shall pay to Contractor the amounts specified in the attached Exhibit A as full payment for the Services. Such amount shall be paid solely in accordance with the billing schedule and payment terms set forth on Exhibit A, including successful completion of the Services or milestones, if any, and satisfaction of any completion criteria set forth on Exhibit A.

B.    In the event that Contractor is compensated in whole or in part on an hourly basis, Contractor agrees to keep complete and accurate books and records of the actual number of hours worked in performing the Services. Contractor shall prepare an invoice from such books and records in accordance with the billing schedule and payment terms set forth in Exhibit A, and Galileo shall pay such invoice within thirty (30) days of receipt by Galileo. During the term of this Agreement and for a period of one year following expiration or termination for any reason, Galileo or

GALILEO AGREEMENT #US993514-EH

its representative may, upon reasonable prior notice, inspect the aforesaid books and records and make copies thereof. Any such audit shall be at the expense of Galileo.

7.    **Billing and Invoicing**

Galileo International Headquarters
9700 W. Higgins Road, Suite 400
Rosemont, IL    60018
Attn: ACCOUNTS PAYABLE

A.    Contractor will invoice as outlined in Exhibit A.

B.    Contractor shall maintain complete and accurate records of all amounts billable to and payments made by Galileo hereunder in accordance with generally accepted accounting practices. Contractor shall retain such records for a period of seven (7) years from the date of final payment for Services covered hereby. Contractor agrees to provide reasonable supporting documentation concerning any disputed amount of an invoice to Galileo within thirty (30) days after Galileo provides written notification of the dispute to Contractor.

8.    **Passing of Risk**

Notwithstanding delivery of the Software in accordance with Clause 5 hereof, the Contractor shall be liable for any loss or damage to the Software or any part thereof until Acceptance by Galileo.

9.    **Training, Consultancy and Project Management**

The Contractor shall provide training, consultancy and project management services relating to the installation and customization of the Software (including all third party software ) to meet Galileo's requirements (in accordance with the Exhibit A hereto. Thereafter, the Contractor shall provide such services to Galileo, as Galileo shall request, at the Contractor's most favoured rates.

10.    **Warranty and Support**

(a)    Notwithstanding the provisions of sub-clause (a) above, the Contractor warrants to Galileo that the Software and the Bespoke Software shall conform to the specification drawn up by the Contractor to meet Galileo's requirements and undertakes to make best efforts to fix or patch any material defects or deficiencies within ten (10) business days and to follow up by a new version, when commercially available, incorporating the same together with any rectification of non-material defects, deficiencies or errors. Contractor further agrees that the fix, patch or new version is subject to the warranty period hereunder. The Contractor undertakes to perform such warranty on the Software and the Bespoke Software for such defects or bugs reported to the Contractor within a 12-month period from the Date of Acceptance and thereafter for any latent or patent defects, all free of charge in accordance with the terms of the Systems Support Agreement.

(b)   In addition to all other warranties contained herein or implied by law, the Contractor warrants that:

     (i)   it has the authority to act on behalf of all third party suppliers of the Software for the purposes of this Agreement;

     (ii)  it will continue to ensure the compatibility of the Software and the Bespoke Software;

(c)   Following the warranty period, the Contractor shall (if Galileo so decides) provide System Support - in accordance with the terms of the System Support Agreement referred to in the Exhibit C hereto.

(d)   The Contractor also warrants that the Software supplied hereunder including the Bespoke Software, shall be free from all viruses and other contaminants including but not limited to any codes or instructions that may be or will be used to access, modify, delete or damage any data files or other computer programs used by the Galileo. The Contractor warrants that it has, used the most comprehensive and up-to-date virus checker prior to delivery of the Software and Bespoke Software,.

(e)   The Contractor also warrants that there are no disabling programs or devices in the Software or Bespoke Software nor will the Contractor introduce any at any time.

## 11. Personnel

All persons providing Services to Galileo under this Agreement shall at all times be employees of Contractor and not of Galileo. Contractor at all times shall be an independent contractor with full and complete responsibility for all of its employees, representatives, and subcontractors (hereafter "Personnel"), including, without limitation, payment of all payroll-related taxes.

## 12. Changes

A.   Any change in the scope of the Services provided hereunder that will result in an increase or decrease in any price hereunder must be agreed to by both parties in advance and shall be evidenced by an amendment to Exhibit A of this Agreement.

B.   Galileo personnel may from time to time render assistance or give technical advice to, or effect an exchange of information with Contractor personnel concerning the work to be performed hereunder. However, such exchange of information or advice shall not vest the Contractor with the authority to change the Services to be performed hereunder or the provisions of the Agreement, nor shall such change in services or provisions of the Contract be binding upon Galileo unless incorporated as a change in accordance with paragraph A. hereof.

## 13. Project Managers

Contractor and Galileo shall each designate, prior to the commencement of work under this Agreement, a project manager who shall have responsibility for conveying decisions on behalf of the respective parties under this Agreement. Such designated project managers shall be as specified on <u>Exhibit A</u> (or as otherwise specified from time to time in writing by either party to the other). All correspondence and reports

GALILEO AGREEMENT #US993514-EH

pertaining to this Agreement shall be initiated by and addressed to the respective project managers, except that notices under this Agreement shall be addressed as specified under Notices below.

14. **Proprietary Rights**

A. "Custom Developments" shall mean inventions, designs, computer programs, modules, products and related documentation, including, without limitation, the Bespoke Software and the reports referred to in Article 6 hereof, made or conceived solely or jointly by Contractor, or created wholly or in part by Contractor, solely for Galileo in connection with the Services to be rendered pursuant to this Agreement. Contractor hereby assigns to Galileo all proprietary rights associated with Custom Developments. Contractor shall not retain any copies of Custom Developments and may not reuse or resale these Custom Developments without the written permission of Galileo.

B. "Proprietary Materials" shall mean: (1) any software programs and documentation owned or distributed by Contractor; (2) any subroutines that are used in developing or that are embodied in the Custom Developments; and (3) any existing tools or utilities developed by or on behalf of Contractor. Contractor shall retain all right, title, and interest (including all copyright, trade secret and patent rights) in the Proprietary Materials. Contractor hereby grants to Galileo and its affiliates a non-exclusive, world-wide, royalty-free, perpetual license to use, modify, copy and authorize others to use, copy and modify all Proprietary Materials that are incorporated into the Custom Developments.

C. Contractor represents and warrants that neither Contractor nor any Personnel have any obligations to prior employers or others relating to proprietary or confidential information or any inventions or discoveries relating to the business of Galileo, and neither Contractor nor any Personnel is bound by any restriction, agreement, judgement or other limitation limiting Contractor's ability to enter into this Agreement or to carry out its terms or shall engage in any activity or take any action that would be in conflict with or that would result in a breach or violation of any such restriction, agreement, judgement or other limitation.

15. **Travel Expenses**

Galileo shall reimburse Contractor for reasonable and necessary travel and living expenses, including, without limitation, air fare (Coach Class only), lodging, meals, taxi, telephone and rental car, actually incurred by Contractor or Personnel in connection with Services-related travel approved by Galileo, up to the maximum(s), if any, set forth on Exhibit A. Such expenses shall be reimbursed by Galileo only upon submission by Contractor of written expense reports documenting such expenses with receipts for all expenditures greater than twenty-five dollars ($25.00). Except for the travel-related expenses specified in this Article 15, Galileo shall not be responsible for any out-of-pocket expenses of Contractor or Personnel.

GALILEO AGREEMENT #US993514-EH

16. **Taxes**

    A.   Galileo shall pay any sales or use taxes (except for any tax levied upon or measured by Contractor's gross receipts) imposed by any taxing authority and required to be paid by Contractor or Galileo as a result of the services provided to Galileo under this Agreement. Galileo shall not be liable for any tax levied upon or measured by the income of Contractor. Galileo shall not be liable for any interest or penalties assessed as a result of any delay by Contractor in connection with any such taxes.

    B.   If a claim is made against Contractor for any taxes that are to be paid by Galileo, Contractor shall promptly notify Galileo. If Galileo so requests in writing, Contractor shall, at Galileo's expense, take such action as Galileo may reasonably direct with respect to such taxes, including payment of such taxes under protest. If the tax has been paid, and if requested by Galileo, Contractor shall, at Galileo's expense, take such action as Galileo may reasonably direct, including allowing Galileo to file a claim or commence legal action in Contractor's name, to recover such tax payment. In the event of refund or recovery of any tax, or part thereof, Contractor shall pay to Galileo promptly that portion of the tax paid by Galileo, including any interest received thereon.

17. **Insurance**

Contractor at its own expense will obtain and maintain in full force and effect under terms satisfactory to Galileo policies of insurance in the following types and minimum amounts:

DESCRIPTION

MINIMUM AMOUNT

-------------------------------------------------------------

----------------

----

    A.   Comprehensive General Liability, (including contractual completed operations, independent contractor, and product hazards):

        (1) Public liability:

A combined total of $500,000

        (2) Property damage:

    B.   Automobile Liability:

        (1) Bodily injury:

A combined total of $500,000

        (2) Property damage

Workers compensation as required by law.

**GALILEO AGREEMENT #US993514-EH**

D.    Umbrella Coverage:      $ 500,000 per occurrence

Contractor agrees to furnish Galileo with certificates of insurance that show compliance with the stated requirements prior to or upon execution of this Agreement.  Galileo will be given at least thirty (30) days' advance written notice in the event of cancellation, termination, or material modification of the coverage.

## 18.  Indemnification

Each party shall defend, indemnify and hold harmless the other party, its owners, officers, employees, and agents from and against any and all claims, suits, liabilities, judgements, losses, damages, fines, costs and expenses (including reasonable attorneys' fees and expenses) resulting from any claim, suit or demand by any third party arising from (i) injuries to or deaths of persons or loss of or damage to tangible property caused by such party or its Personnel, (ii) the negligence or wilful misconduct of such party or its Personnel or (iii) breach by such party or its Personnel of this Agreement (including any representation or warranty made hereunder), all except to the extent proximately caused by the negligence or intentional misconduct of the other party.  The parties' obligations under this Article 18 shall survive the expiration or other termination of this Agreement.  The parties agree to provide the other with written notice of any such third party claim or suit and reasonable co-operation in the defense of any such claim or suit.  The parties further agree to assign to the other, at its option, the right to defend and/or settle such claim or suit.

## 19.  Consequential Damages

EXCEPT AS PROVIDED UNDER ARTICLE 18 ABOVE, NEITHER PARTY SHALL BE LIABLE FOR, AND EACH PARTY WAIVES AND RELEASES ANY CLAIMS AGAINST THE OTHER PARTY FOR, ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOST REVENUES, LOST PROFIT, OR LOSS OF PROSPECTIVE ECONOMIC ADVANTAGE, RESULTING FROM PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

## 20.  Non-disclosure

Each party acknowledges that certain information provided by the other party may be identified and must be considered confidential, proprietary, or trade secret information. No such information shall be duplicated, used or disclosed to any other person, with the exception of its own employees and agents who must have such information for the performance of their obligations under this Agreement and as necessary to secure the performance of obligations hereunder by legal means, unless authorized in writing by the other party. Confidential and proprietary information does not include any information which, at the time of disclosure, is generally known by the public or any competitors of either party, is independently developed by the receiving party, or required to be disclosed pursuant to Law.  The confidential obligations of each party herein shall continue, notwithstanding the termination of this Agreement.  Except in any

proceeding to enforce the provisions of this Agreement, neither Party will disclose to any third party the financial terms of this Agreement, the terms contained in any Attachment or Exhibit hereto, or any other confidential information of the other party, including, without limitation, orders, forecasts, financial or marketing plans or data, or any data processing programs or procedures. This Section 19 shall survive any termination of this Agreement.

### 21. Confidential Information

A. Galileo and the Contractor hereby agree that all information, whether written or oral, relating to the other party, or received by the other party from a third party pursuant to confidentiality restrictions, which is provided to the other party or of which the other party becomes aware either advertently or inadvertently while performing Services for the other, which information may include, but shall not be limited to, the other party's products, customers, plans, business, finances, and technological developments and programs, shall be considered proprietary and confidential information of the other party ("Confidential Information"). For the purposes of this Agreement, any information based on or derived from any Confidential Information shall be deemed to be Confidential Information hereunder.

B. Both parties agrees that during the term of this Agreement and for a period of five (5) years following termination for any reason: (i) they shall not disclose any Confidential Information to any third party; (ii) they shall use the same degree of care and discretion as they employ with respect to their own confidential information to prevent the disclosure of any Confidential Information; and (iii) they shall not use any Confidential Information other than strictly in connection with their performance under this Agreement.

C. Both parties agree that no Confidential Information shall be disclosed by them, except to their employees who have a need-to-know such Confidential Information and who are parties to a written agreement with the other party which prohibits the disclosure of confidential information. The parties shall ensure that each of their employees who shall have access to Confidential Information is aware of the non-disclosure and non-use provisions of this Agreement and agrees to be bound by them. The parties shall be liable to the other party for any violation by any said employee of such provisions.

The parties shall promptly return to the other all Confidential Information (including any and all copies thereof in whatever form) upon the termination of this Agreement for any reason. The parties agree that the terms and conditions of this Agreement shall be deemed Confidential Information.

### 22. Publicity

Contractor may refer to Galileo as a customer reference in non-public business dealings with potential customers and financial concerns. Neither party shall refer to this Agreement or use the name of the other party in any form of publicity or advertising, either directly or indirectly, without the prior written consent of the other party.

Contractor shall not use any Galileo trade name, trademark, service mark or product name, including the names "Galileo Partnership," "Galileo," or Galileo's logotype, without first obtaining Galileo's prior written approval of such use.

23. **Force Majeure**

Neither party shall be responsible for delays in or suspension of performance caused by acts of God or governmental authority, strikes or labor disputes, fires or other loss of manufacturing facilities, breach by suppliers of supply agreements, or other similar or dissimilar causes beyond the reasonable control of that party.

24. **Termination**

A. If either party (the "Defaulting Party") fails to observe or perform any of its material obligations under this Agreement and if its failure continues for a period of ten (10) days after written notice from the other party to the Defaulting Party thereof, then without prejudice to any other rights or remedies the other party may have, the other party may terminate this Agreement without termination liability upon written notice to the Defaulting Party. Contractor acknowledges and agrees that Contractor shall be in material breach of this Agreement in the event that Contractor does not perform the Services to Galileo's reasonable satisfaction.

B. Notwithstanding anything to the contrary in this Article 24, Galileo may terminate this Agreement without termination liability immediately upon written notice to Contractor in the event of any violation by Contractor or Personnel of the confidentiality provisions in Article 21 hereof or breach by Contractor of the representation or warranty in Article 3 hereof.

C. All obligations of each party that have accrued before termination or that are of a continuing nature shall survive termination.

D. In the event of any termination of this Agreement prior to the expiration of the Term, Contractor shall be entitled to receive compensation in accordance with Exhibit A through the effective date of termination but shall not be entitled to any compensation payable in accordance with Exhibit A after the effective date of termination, unless otherwise provided in Exhibit A.

E. Either party may terminate this Agreement for convenience upon thirty (30) days advance written notice provided that all fees for services performed by Contractor have been paid.

25. **Non-waiver**

No waiver by either party of any default or breach by the other party of any provision of this Agreement shall be effective unless made in writing, and no waiver shall operate as or be deemed a waiver of any subsequent default or breach.

26. **Notices**

Notices under the terms of this Agreement shall be in writing and sent by prepaid certified mail, return receipt requested, or by telegram or telecopier, to the addresses

GALILEO AGREEMENT #US993514-EH

provided above for each party. Notices shall be effective on the first business day following receipt thereof. Notices sent by certified mail shall be deemed received on the date of delivery as indicated on the return receipt; notices sent by telegram or telecopier shall be deemed received on the date transmitted.

### 27. Assignment

Galileo may assign this Agreement to any Galileo owner, to any affiliate of such Galileo owner, to any wholly-owned subsidiary, or to any successor of all or substantially all of its business or assets by written notice to Contractor. This Agreement may not be otherwise assigned in whole or in part, and any such assignment shall be void and of no effect. Contractor shall not assign or subcontract any part of the Services to be performed under this Agreement without the prior written consent of Galileo.

### 28. Right to Audit

Upon reasonable notification to the Contractor, Galileo, or its authorized representative, will have the right to perform periodic audits, and to review, in the course of an audit, any of the Consultant's data, documents, records, worksheets, systems, standards, procedures, or practices, directly related to the tasks performed in connection with the Services related to the Agreement. The Consultant must provide Galileo its full co-operation and any assistance reasonably required to facilitate an audit.

### 29. Governing Law

This Agreement and any dispute arising under or in connection with this Agreement, including any action in tort, shall be governed by the internal laws of the State of Illinois, without regard to its conflict of law principles. All actions brought to enforce or arising out of this Agreement shall be brought in federal or state courts located within the County of Cook, State of Illinois, the parties hereby consenting to personal jurisdiction and venue therein.

### 30. Year 2000 Compliance

The Consultant warrants that, where applicable, any software supplied hereunder and/or Services supplied pursuant to this agreement will be year 2000 compliant. "Year 2000 compliant" means that it will accurately process date/time data (including, but not limited to, calculating, comparing, and sequencing) from, into, and between the twentieth and the twenty-first centuries, and the years 1999 and 2000 and leap year calculations, to the extent that other information technology, used in combination with the software, properly exchanges date/time data with it.

GALILEO AGREEMENT #US993514-EH

**31. Entirety of Agreement**

This Agreement supersedes all prior oral or written representations or communications between the parties and, together with Exhibits A through E, constitutes the entire understanding of the parties regarding the subject matter of this Agreement.

IN WITNESS WHEREOF, the parties by their authorized representatives have executed this Agreement on the dates provided below.

**PLANVIEW, INCORPORATED**

By _____

Name   Gregory S. Gilmore
       Vice President, Business Development

Title _____

Date   AUGUST 26 1999

**GALILEO INTERNATIONAL, L.L.C.**

By _____

Name   Lee M. Tobin

Title  Senior Manager, Purchasing

Date   26 August 1999

GALILEO AGREEMENT #US993514-EH

## Schedule A

7320 North Mopac, Suite 312
Austin, Texas 78731

Phone: (512) 346-8600
Fax: (512) 346-9180
e-mail: market @ planview.com
Web: www.planview.com

| To: | Elaine Holm |
| --- | --- |
| | Galileo International |
| | 5350 S. Valencia Way |
| | Englewood, CO 80111 |
| Contract #: | |

| Quantity | Description | List | Disc % | Price |
| --- | --- | --- | --- | --- |
| **Repository** | **PlanView Software** | | | |
| Organizational | PlanView Central Repository | $170,000 | 26% | $125,8 |
| | ✓ Data Exchange | | | |
| | ✓ Job Server | | | |
| | ✓ Application Server | | | |
| | ✓ Snapshot | | | |
| | ✓ System Administrator | | | |
| | ✓ Desktop presentation graphics (1) | | | |
| | ✓ Electronic documentation & schema | | | |
| **Desktop** | | | | |
| 56 | Planview Planners - concurrently linked to repository | $201,600 | 39% | $122,97 |
| 1600 | PlanView Time Reporter/Time Approver seats | $384,000 | 39% | $234,24 |
| 40 | PlanView Requestor seats | $9,600 | 37% | $6,04 |
| | Software subtotal | | | $489,06 |
| | **Optional Implementation and Training Services** | | | |
| 57 (days) | Implementation Services | $1,600 | 15% | $77,52 |
| 7 (days) | Training Services | $2,000 | 32% | $9,52 |
| | If these services are used by Galileo this is the not to exceed pricing. | | | |
| | Services subtotal | | | $87,000 |
| | Software and Services subtotal | | | $576,104 |
| | Second Year Maintenance | | | $73,360 |
| | Contract Total | | | $649,464 |

# EXHIBIT A

## STATEMENT OF WORK

## PROJECT AND RESOURCE MANAGEMENT

**GALILEO AGREEMENT #US993514-EH**

Table of Contents

1.0    SCOPE & OBJECTIVE
      1.1    Objective
      1.2    Background
      1.3    Planned Improvements
      1.4    Scope of Work
      1.5    Performance
      1.6    Location of Work
      1.7    Training

2.0    DELIVERABLES

3.0    FEES & PAYMENT
      3.1    Payment
      3.2    Travel
      3.3    Fees
      3.4    Additional Purchases
      3.5    Maintenance

4.0    SCHEDULE OF WORK

5.0    SPECIAL PROVISIONS
      5.1    Project Management
      5.2    Galileo Purchasing Representative

## 1.0   SCOPE & OBJECTIVE

### 1.1   Objective

This Statement of Work (SOW) describes the vendor tasks and responsibilities to meet Galileo's requirements associated with the selection, purchase and implementation of the Project and Resource Management project.

The requirements set forth in this SOW, including all attachments, are hereby incorporated into the final contract and shall constitute "Services".

### 1.2   Background

Galileo currently uses Microsoft Project 98 in conjunction with add-on products from Innate to address the allocation and utilization of knowledge workers. This toolset has been in use for approximately three years, but does not meet Galileo's future enterprise-wide needs. In particular, it does not support budgeting based on resource loading, which is a company requirement for year 2000.

Currently managers use Microsoft Project to assign staff to a variety of project and non-project tasks. These assignments are reflected on timesheets, which individual staff members use to record how they spend their time. Information from completed timesheets is used to update plans in Microsoft Project. Management reports of staff allocation and utilization are generated both weekly and monthly, based on information from plans and timesheets. The managers and staff are geographically dispersed across several sites in the US and the UK. Currently some 160 managers are maintaining 400 plans; 1600 staff complete timesheets every week.

There is a well-defined business process that controls the approval and tracking of all project and non-project work. The approval and project management systems are integrated, to ensure that time can only be charged to approved items.

### 1.3   Planned Improvements

Galileo is looking for significant improvements in four main areas:

♦ **Functionality** – central repository of enterprise-wide resource loading information for better support of business processes, including strategic planning and budgeting. Simplified interface for high level planning and resource allocation, outside of Microsoft Project. Features to help improve the accuracy of time recording and approval.

♦ **Performance** – greatly reduced response times across the WAN environment for functions such as multi-project reporting, minimal batch processing, shortened cycletimes.

♦ **Integration** – open architecture, ability to access information directly from other systems, such as HR (PeopleSoft), Problem Management, Project Approval and Tracking.

♦ **Maintenance** – easy to maintain system requiring minimal software customization, scalable architecture, web enabled.

GALILEO AGREEMENT #US993514-EH

## 1.4  Scope of Work

The Consultant shall furnish the software, labor, documentation and testing to accomplish the following tasks.

**PlanView Responsibilities**

- Install the PlanView Repository on the database server.
- Instruct Galileo database support staff on any PlanView specific installation, backup and restore procedures for the Repository.
- Install the PlanView applications on the application server.
- Instruct Galileo applications support staff on any PlanView specific installation, backup and restore procedures for the applications.
- Demonstrate to Galileo application support staff of the PlanView client install / download on a sample client PC.
- Instruct Galileo application support staff on any PlanView specific install / download procedures for client PCs.
- Provide formal training for Galileo application administrator(s) on PlanView administration functionality, including application configuration, user set-up and security.
- Provide formal training for an initial set of Galileo users and trainers on PlanView planner functionality.
- Under direction of the Galileo project manager, provide expertise to assist with the migration of data from Galileo's legacy systems to the PlanView Repository.
- As agreed with the Galileo project manager, design, develop and test utilities to support the migration of data from Galileo's legacy systems to the PlanView Repository.
- Under direction of the Galileo project manager, assist with the design, development and testing of an interface between Galileo's PeopleSoft HRMS and the PlanView Repository.
- Under direction of the Galileo project manager, assist with the design, development and testing of an interface between Galileo's Orbit PMS and the PlanView Repository.

## 1.5  Performance

Galileo reserves the right to reject staff assigned by the vendor to this project if, in the judgement of the Galileo Project Manager, the quality of work provided is unacceptable. Replacement staff should be provided within five (5) working days.

## 1.6  Location of Work

The primary site for work shall be performed at Galileo International, 6901 S. Havana Street, Englewood, Colorado or 5350 S. Valentia Way, Englewood, Colorado. PlanView may also do development work at their office at 7320 North Mopac, Suite 312, Austin, Texas 78731. Galileo will provide Consultant staff with access to work space, telephones (local and long distance), workstations, at least one printer, systems, data, databases, as required to complete tasks specified in this document.

## 1.7  Training

Consultant will provide training for 12 Galileo employees in the standard use of the software product including documentation and training materials. This training is included in the Implementation section of the Schedule A. Additional training classes are available and will be discounted 15% off the then list price.

GALILEO AGREEMENT #US993514-EH

## 2.0    DELIVERABLES

The Consultants shall design, develop and deliver the following items:

- All materials (notes, slides, sample files, etc.) necessary to support a formal training class on PlanView application administration functionality, and the rights for Galileo to use them in any future internal training classes.
- All materials (notes, slides, sample files, etc.) necessary to support a formal training class on PlanView planner functionality, and the rights for Galileo to use them in any future internal training classes.
- Application Programming Interface (API) code to support the migration of data from Galileo's legacy systems to the PlanView Repository, including all user and technical documentation.
- API code to facilitate the transfer of data from Galileo's PeopleSoft HRMS to the PlanView Repository, including all user and technical documentation.
- API code to facilitate the transfer of data from Galileo's Orbit PMS to the PlanView Repository, including all user and technical documentation.

## 3.0    PAYMENT and FEES

### 3.1    Payment

Payment terms for software and services outlined in this schedule are Net 30 days from date of receipt of invoice.  Software will be invoiced upon shipment.  All professional services described under this Statement of Work will be performed on a Time and Materials basis with a Not to Exceed (NTE) ceiling price.  To receive payment, Consultant must submit a monthly invoice listing work completed in actual hours, by task, by individual.  Consultant must provide weekly status reports that will detail accomplishments by task, by individual as well as total hours worked.  Galileo will not be responsible for hours billed in excess of this NTE amount, except for written change orders as agreed to by both parties.  Invoice must be submitted to Purchasing, Denver care of Elaine P. Holm.

Because payment is being made on a Time and Material basis, Galileo can cancel this engagement at any time, without cause and without prior written notice to the Consultant. Galileo will pay for all hours accrued up to time of termination.

### 3.2    Travel

All travel must be completed in accordance with Galileo's travel policy.  All travel arrangements must be made through Galileo's Project Manager.

**Travel Not To Exceed**                                    **$19,000**

### 3.3    Fees

| Software Licenses | # of Licenses | % Discount | Extended Net Price |
|---|---|---|---|
| PlanView Repository | 1 | 26% | $125,800 |
| PlanView Time Reporter | 1600 | 39% | $234,240 |

GALILEO AGREEMENT #US993514-EH

| | | | |
|---|---|---|---|
| PlanView Planner (concurrent users) | 58 | 29% | $122,976 |
| PlanView Work Requestor | 40 | 37% | $  6,048 |
| | License Fee TOTAL | | $489,064 |

The first year maintenance and support fees are inclusive in the above license fees.

| Title | Total Hours | Hourly Rate | Discount | Extended Net Price |
|---|---|---|---|---|
| Consulting Services | 512 | $200 | 15% | $ 87,000 |
| | | | TOTAL | $576,064 |

## 3.4   Additional Purchases

Galileo shall have the ability during the term of this agreement, to purchase additional licenses at the above-negotiated rates.

## 3.5   Maintenance and Support

Maintenance is calculated at 15% of the net purchase price of the software licenses.  Galileo's annual maintenance price for Year 2, which shall be due one calendar year from the date of signature of this agreement shall be $73,360.

Maintenance and support terms and conditions are outlined in Exhibit C, Systems Support Agreement.

GALILEO AGREEMENT #US993514-EH

## 4.0    Schedule of Work

The following timeline represents the teams efforts proposed at the beginning of the Project and Resource Management effort. This timeline will be amended as the project progresses.

| Activity | Start | Finish |
|---|---|---|
| Install hardware / software and configure software for pilot | Jul 12, 99 | Jul 23, 99 |
| Run pilot | Jul 26, 99 | Aug 20, 99 |
| Conduct performance and volume testing | Jul 26, 99 | Aug 20, 99 |
| Review pilot and confirm software configuration for production | Aug 23, 99 | Sep 3, 99 |
| Review current data schema versus new data schema | Jun 28, 99 | Jul 16, 99 |
| Architect additional structures for new data schema | Jul 19, 99 | Aug 13, 99 |
| Design interface with PeopleSoft | Jul 19, 99 | Aug 13, 99 |
| Build interface with PeopleSoft | Aug 16, 99 | Sep 10, 99 |
| Design interface with Orbit | Jul 19, 99 | Aug 13, 99 |
| Build interface with Orbit | Aug 16, 99 | Sep 10, 99 |
| Prepare data migration plan | Aug 16, 99 | Aug 27, 99 |
| Develop data migration utilities | Aug 30, 99 | Sep 10, 99 |
| Build production database | Aug 23, 99 | Sep 3, 99 |
| Build production system | Sep 6, 99 | Sep 10, 99 |
| Test data migration and import from PeopleSoft and Orbit | Sep 13, 99 | Sep 24, 99 |
| Test production system | Sep 27, 99 | Oct 15, 99 |
| Perform final, pre-cutover data migration / refresh | Oct 16, 99 | Oct 17, 99 |
| *Cutover (milestone)* | | *Oct 18, 99* |

## 5.0    SPECIAL PROVISIONS

### 5.1    Special Provisions

Consultant and Galileo shall each designate a Project Manager, prior to the commencement of work under this Agreement, who shall have responsibility for directing day to day work under this Agreement. All correspondence and reports pertaining to this Statement of Work shall be initiated by and addressed to the respective Project Manager as listed below:

                **Galileo Project Manager:**    **William Spicer**

                **PlanView Project Manager:**

Consultant and Galileo shall each designate an Accountable Manager, prior to the commencement of work under this Agreement, who shall be available to mediate issues when assigned Project Managers cannot resolve them and will have the final authority.

                **Galileo Accountable Manager:**    **Jane Balthrop**

                **PlanView Accountable Manager:**    **Dave Darden**

### 5.2    Galileo Purchasing Representative

Galileo Purchasing Representative shall be contacted in the event changes are contemplated with respect to the SOW. Only the Purchasing Representative may authorize changes to the SOW. Any discussions or agreements, whether verbal or in writing shall not amend the Agreement without the prior written approval of Galileo Purchasing.

*Agreed to:*

**Galileo International**

By ___Jon M. Til___

Name (type or print): _Lor. M. Tobin_

Date: _8/26/99_
Customer Address
9700 W Higgins Rd  Ste 400
Rosemont IL  60018

*Agreed to:*

**PlanView, Inc.**

By: _____

Name (type or print): _Gregory S. Gilmore_

Date: _8/26/99_
Consultant Address
7320 North Mopac
Suite 312
Austin, TX  78731

Enterprise Number:

Agreement number:

Addendum number:

GALILEO AGREEMENT #US993514-EH

# EXHIBIT B

### SOFTWARE LICENSE
### AGREEMENT

#### Number 99-0308-JD-2

This AGREEMENT dated as of 06 July 1999, is between PlanView, Inc., 7320 North Mopac, Suite 312, Austin, Texas 78731 (hereinafter called "PlanView"), and Galileo International, 5350 S. Valentia Way, Englewood, CO, 80111 (hereinafter called "CUSTOMER").

## SOFTWARE LICENSE

### 1.0 GRANT OF LICENSE

1.1 PlanView hereby grants to CUSTOMER and its affiliates, on the terms and conditions hereinafter set forth, a non-exclusive, non-transferable license to use, exclusively for its own internal purposes, the Licensed Programs at CUSTOMER's location. The license granted hereunder shall not be deemed to authorize CUSTOMER to change or modify in any way any Licensed Program, except as permitted under this Agreement.

1.2 For purposes of this AGREEMENT, "Licensed Programs" means those computer software programs marketed as PlanView$^{TM}$ (as well as any updates thereof furnished by PlanView pursuant to the terms of this AGREEMENT) and in any amendments thereto, in machine readable, printed or other form, including but not limited to instructional and operational manuals, flow charts, logic diagrams, file layouts and listings, whether developed pursuant to this Agreement or otherwise. The term Licensed Program does not include source code in any form.

1.3 For purposes of this AGREEMENT, "Use" means (i) transferring any portion of any Licensed Program from storage units or media into the CUSTOMER's computer equipment for processing; (ii) utilizing any portion of any Licensed Program in the course of the operation of any equipment or in support of the use of any equipment or program; or (iii) merging any Licensed Program in machine readable form into another program. "Use" also means referring to any instructional or operational manual included in the definition of Licensed Program for the purpose of operating or understanding the Licensed Program.

### 2.0 CONDITIONS OF LICENSE

2.1 PlanView grants a perpetual license to CUSTOMER with the option of an annual maintenance agreement with PlanView.

2.2 CUSTOMER may copy, for backup purposes only, any portion of Licensed Programs provided in machine-readable form. CUSTOMER may not copy any portion of Licensed Programs provided in printed form, including but not limited to instructional or operational manuals.

2.3 The license granted hereunder may under no circumstances be sublicensed, transferred or assigned by CUSTOMER.

### 3.0 PRICE AND PAYMENT TERMS

3.1 Payment of license fees shall be as set forth in Schedule A hereto and any written amendments thereto.

3.2 Any applicable sales, use, personal property, excise, or other taxes (other than income or corporate franchise taxes) will be added to the license fee.

3.3 PlanView will invoice the CUSTOMER for software upon shipment.

### 4.0 DELIVERY AND INSTALLATION

4.1 Any delivery times quoted by PlanView or its personnel are estimates only and PlanView will not be liable for any professionally reasonable delays in delivery.

4.2 Title to the Licensed Programs will at all times remain with PlanView.

4.3 Risk of loss of Licensed Programs shall transfer to CUSTOMER upon delivery.

4.4 It is the responsibility of the CUSTOMER, without charge to PlanView, to provide and prepare the installation location for the Licensed Programs.

# GALILEO AGREEMENT #US993514-EH

## 5.0 TRAINING

5.1 PlanView will make available to CUSTOMER training courses in the operation of the Licensed Programs as shown in Schedule A hereto . PlanView reserves the right to, in consultation with the CUSTOMER, (i) establish the dates and times of any training course, (ii) specify the content of any training course, (iii) limit the number of students attending any training course based on adequacy of computer equipment provided by CUSTOMER for the training, and (iv) designate the instructor for any training course.

5.2 Additional training services will be available to CUSTOMER at the daily rates as published in Schedule A.

5.3 No representations or guarantees of any kind are made by PlanView with respect to the results of any training services furnished hereunder.

## 6.0 MAINTENANCE

6.1 Maintenance is included in the purchase price outlined in Schedule A for a period of one year from contract date. In the event CUSTOMER elects to purchase maintenance services, such services will be available to CUSTOMER at the annual rate of 15% of the net purchase price of the software outlined in Schedule A, payable in advance.

## 7.0 PATENTS AND COPYRIGHTS

7.1 PlanView warrants that the Licensed Programs do not infringe upon or violate any patent, copyright, trade secret or other proprietary right of any third party. In the event of any claim by any third party against the CUSTOMER, the CUSTOMER will promptly notify PlanView and PlanView shall defend such claim, in the CUSTOMER's name, but at PlanView's expense and shall indemnify the CUSTOMER against any loss, cost, expense, including attorneys fees, or liability arising out of such claim, whether or not such claim is successful. In all such claims, PlanView will use legal counsel acceptable to the CUSTOMER. If PlanView does not initiate defense of the CUSTOMER within thirty (30) days of notification of a claim, then the CUSTOMER may retain legal counsel at PlanView's expense for the purpose of defending CUSTOMER in such claim. In the event any such claim is successful, PlanView shall (a) modify the Licensed Programs to make them noninfringing without affecting their functionality or performance; or (b) procure for CUSTOMER (at PlanView's expense) replacement software with equivalent functionality and performance.

## 8.0 LIMITED WARRANTY

8.1 Upon installation of the Licensed Programs, PlanView will warranty the performance to documented specifications for initial 90 days from the date of Shipment. Source code for the Licensed Programs and all written material associated with this enhancement and maintenance activity shall remain the property of PlanView.

## 10.0 TRADE SECRETS - INTELLECTUAL PROPERTY RIGHTS

10.1 CUSTOMER acknowledges that Licensed Programs, and the original and any copies thereof, in whole or part, and all copyright, patent, trade secret, trademark and other intellectual and proprietary rights thereto which now or hereafter may exist, are owned by and remain the exclusive valuable property of PlanView and embody substantial creative efforts, ideas, and expressions.

10.3 Unless otherwise agreed to in writing by PlanView, CUSTOMER agrees to limit access to the Licensed Programs to its employees only.

## 12.0 TITLE

12.1 The source code of the Licensed Programs, all related written materials, training materials and supporting tools prepared by PlanView in fulfilment of this AGREEMENT shall be the sole and exclusive property of PlanView, free from any claim or retention of rights thereto on the part of the CUSTOMER.

## 14.0 ESCROW

14.1 PlanView warrants that it has an account with a viable escrow agent in effect for the programs and associated documentation licensed under this AGREEMENT, that CUSTOMER is a beneficiary of such escrow arrangement, and that PlanView will update the escrow account will all future releases and documentation of said programs. In the event that PlanView fails to meet its escrow obligation hereunder, PlanView will notify CUSTOMER within ten (10) days of such failure.

## GENERAL PROVISIONS

## 1.1 GOVERNING LAW

The validity, construction and performance of this AGREEMENT, and the rights and obligations of the parties arising in connection therewith, shall be governed in all respects and for all purposes by and construed in accordance with the laws of Cook County in the State of Illinois , United States of America . Such law shall apply to all claims arising out of or in connection with the performance or breach of this AGREEMENT whether such claims are characterized as *contractual, tortious or otherwise*. The parties hereto expressly exclude from such applicable law the U.N. Convention on Contracts for the International Sale of Goods.

## GALILEO AGREEMENT #US993514-EH

1.2 ENTIRE AGREEMENT

This AGREEMENT and the Turnkey Agreement For The Supply Of A Project And Resource Management Software System (the "Turnkey Agreement") sets forth the entire understanding and AGREEMENT between CUSTOMER and PlanView as to the subject matter of their AGREEMENT. In the event of any conflict or inconsistency between this Agreement and the Turnkey Agreement, the terms of the Turnkey Agreement shall govern.

1.3 SUCCESSORS AND ASSIGNS

Neither this AGREEMENT, nor any of the rights and obligations of PlanView or the CUSTOMER arising out of this AGREEMENT, may be assigned to or transferred without the other's prior written consent.

1.4 HEADINGS

Titles or headings to the sections of this AGREEMENT are not part of the terms of this AGREEMENT and are inserted only for convenience.

1.5 NOTICES

All notices, requests and other communications under this AGREEMENT must be made in English to the addressees as signed below.

1.8 TIMELY CLAIMS

No action for breach of this AGREEMENT or any other action to enforce any claim arising out of or in connection with the subject matter of this AGREEMENT shall be brought by CUSTOMER against PlanView more than one (1) year after the cause of action has accrued.

1.9 ACCESS BY PlanView

CUSTOMER agrees to provide PlanView with timely access to the CUSTOMER's computer equipment and Licensed Programs during normal business hours for the purpose of fulfilling its obligations hereunder.

2.0 CUSTOMER ACKNOWLEDGMENT

2.1 CUSTOMER acknowledges that, prior to execution of this AGREEMENT, it has had an opportunity to determine for itself the characteristics and capabilities of the Licensed Programs and is satisfied that the Licensed Programs fulfil CUSTOMER's requirements. PlanView makes no representations of any kind beyond those contained in this AGREEMENT and no agent of PlanView has the authority to make any representations beyond those contained in this AGREEMENT.

**CUSTOMER CERTIFIES THAT IT HAS
READ THE FOREGOING AGREEMENT AND
AGREES TO BE BOUND BY ITS TERMS**

Accepted By:

CUSTOMER:

_Lori M. Tobin_
Authorized Signature

_Lori M. Tobin_
Typed Name

_Senior Manager, Purchasing_
Title

_8/26/99_
Date

PlanView, Incorporated

Authorized Signature

Gregory S. Gilmore
Vice President, Business Development
Typed Name

Title

AUGUST 26 1999
Date

08/19/99                    Page 25

GALILEO AGREEMENT #US993514-EH

# EXHIBIT C

## Systems Support Agreement

## How to Contact Us

### Calling Us

You can reach the Customer Support Department at 512-346-8460 or by fax at 512-346-0249.

### E-Mail

You can reach the Customer Support Team at productsupport@planview.com. PlanView's general e-mail address is @planview.com; if you wish to communicate via e-mail, please contact any PlanView employee for the first part of their address (generally, it will be the first initial and the last name -- not case-sensitive).

### Web Page

www.planview.com. For technical help click on Support.

## Products PlanView Supports

PlanView, Inc. provides technical/product support for these software modules:

| User Modules | Purpose |
| --- | --- |
| Work Requester | To capture all of the customer's work requests. |
| Planning Module | To manage work and resource information. |
| Time Reporter | To capture time accounting and progress information. |
| Time Approver | To approve timesheet information. |

| Support Modules | Purpose |
| --- | --- |
| Administrator Module | To administer work management information. |
| Job Server | To automate and balance processing loads. |
| Mail Gateway | To send and receive information through electronic mail. |
| Presentation Graphics (Milestones) | To prepare presentation quality barcharts. |
| SnapShot | To denormalize data for use with Crystal Reports |
| Resource Search Engine | To search for resources based on availability, skills, etc. |
| Progressing Engine | To integrate time-reported data |
| Data Exchange | To send and receive information in MS Project formats. |

Current supported versions of the above modules are: v2.11, v5.0, v5.1, v5.2 and v5.3.

PlanView, Inc. software products interface with the following databases, however, PlanView, Inc. *only* provides technical support for these products when the customer purchases these products by using PlanView, Inc. as a third party vendor.

- Oracle
- Sybase
- MS SQLServer
- SQLBase
- Other ODBC Compliant databases

GALILEO AGREEMENT #US993514-EH

## Software Maintenance Service

PlanView, Inc. provides Software Maintenance Service as part of our Basic Service Agreement. This service entitles the Customer to receive new PlanView software releases that are generally made available to all PlanView, Inc. Customers.

### Software Maintenance Service

- New Enhancement Releases
- New Maintenance Releases
- Software Patches

### New Enhancement Releases

Approximately every twelve-(12) months, PlanView, Inc. will release a new version of PlanView that contains new enhancements to existing functionality and features. The actual frequency of new enhancement releases can vary from year to year.

### New Maintenance Releases

Approximately every twelve-(12) months, PlanView, Inc. will release a new version of PlanView that contains fixes to known problems. The actual frequency of the new maintenance releases can vary from year to year. The number of known problems fixed in a maintenance release can vary based on priority and timing of when the problems were reported. Maintenance releases are released approximately six (6) months after an enhancement release.

### Software Patches

Some reported problems can be fixed with a Software Patch. In cases where a reported problem can be fixed by a Software Patch, PlanView, Inc. will issue a patch to a Customer. Reported problems are dealt with on a case by case basis when evaluating the possibility of fixing the reported problem with a Software Patch.

GALILEO AGREEMENT #US993514-EH

## Documentation Maintenance Service

PlanView, Inc. provides Documentation Maintenance Service as part of our Basic Service Agreement. This service entitles the Customer to receive new PlanView user documentation associated with a new software release.

New documentation can include:

- New User Guides
- New Release Notes
- Any other PlanView documentation relating to a new release.

This service only applies to documentation relating to the PlanView software products purchased by the Customer.

The following documentation is available to the customer:

**User's Guides**

PlanView Planner User's Guide
PlanView Time Reporter User's Guide
PlanView Administrator User's Guide
PlanView Reports Guide
PlanView Work Requester User's Guide
PlanView SnapShot User's Guide
PlanView Data Exchange User's Guide
PlanView D/E API Reference User's Guide

**Training Guides**

PlanView Product Overview Training Guide
PlanView Work Management Features Guide

Each Customer will be provided with one hard copy of each User's Guide and an electronic form of the documentation on CD-ROM, to be printed as many times as the Customer needs. Training Guides are shipped prior to scheduled Training Courses and are not included with the initial software package. The purchase price for additional PlanView User's Guides is as follows:

| User's Guides: | Price per Guide |
|---|---|
| PlanView Planner User's Guide | $25.00 |
| PlanView Administrator User's Guide | $20.00 |
| PlanView Time Reporter/Time Approver User's Guide | $15.00 |
| PlanView Work Requester User's Guide | $10.00 |
| PlanView Reports Guide | $15.00 |
| PlanView Data Exchange User's Guide | $10.00 |
| PlanView D/E API Reference User's Guide | $10.00 |
| PlanView SnapShot User's Guide | $10.00 |
| Training Guides: | Price per Guide |
| PlanView Product Overview Training Guide | $15.00 |
| PlanView Work Management Features Training Guide | $15.00 |

** A Site License entitles the customer to copy PlanView user's guides.

For Customers who have not purchased a Site License of PlanView with previous versions, the cost for the right to copy PlanView User's Guides is $2,500.00. The PlanView User's Guides will be furnished in electronic format.

## Telephone Support Service

Provides access to knowledgeable Customer Support Consultants to help the Customer in their usage of PlanView products. This service includes:

- Problem analysis and resolution
- Delivers alternative solutions
- Remote diagnostics
- Telephone help installing PlanView products
- Advice and consultation in the use of PlanView products

## Hours of Service Availability

Telephone Support is provided between 7:00 AM and 7:00 PM central time Monday through Friday excluding PlanView, Inc.'s holidays.

### Prioritization of Requests

PlanView, Inc. assigns a priority to each request submitted by customers. As PlanView, Inc. does not possess unlimited resources; we rely on the priority assigned to each request as a means of determining the order in which to act upon requests. These priority classifications are described in the table below.

| Priority Assigned | Interpretation |
|---|---|
| 1. (Urgent: Drop Everything) | Down Production System. Critical user(s) or components are not functional. Business / Decision-making is affected. |
| 2. (High: Do ASAP) | Impaired Production System. Critical user(s) are degraded. Business / Decision-making is affected. |
| 3. (Medium: Do it soon) | Non – critical user(s) or components are not functional or degraded. Business / Decision-making is NOT affected. |
| 4. (Low: When time permits) | Little or no impact. Cosmetic problem or cosmetic enhancement. |

### Response Policy

PlanView Customer Support makes every effort to meet the following targets when responding to requests from customers. In certain cases, on-site assistance can be arranged if the customer's request is deemed to require an on-site visit to help in the research and investigation of the request.

| Priority of Request | Response (Call Back) Time | Resolution Time |
|---|---|---|
| 1 | Within 1 hour | Within 48 hours |
| 2 | Within 4 hours | Within 1 month |
| 3 | Within 8 hours | In the next software release |
| 4 | Within 24 hours | Time Permitting |

PlanView Customer Support makes special efforts to support Consultants in the field by responding to any and all requests from Consultants in the field within 1 hour.

## Customer Support Request Resolution Process

### Introduction

This document describes the process by which PlanView, Inc. Customer Support resolves requests submitted by PlanView, Inc. customers. This process includes the submission, prioritization, and resolution of requests.

### Customer Request Submission

## Customers may submit requests to Customer Support via the following methods:

- **Telephone** – Customers may call Customer Support (512 - 346 - 8460) between the hours of 7 AM and 7 PM CST Monday through Friday, and request to speak to the next available Support Consultant.

- **Internet Access (*WebFirst*)** – Customers may access *WebFirst* from PlanView's web site (www.planview.com). In addition, they can access *WebFirst* directly (www2.planview.com/WebFirst). The information entered through *WebFirst* is monitored by the Customer Support Dispatcher who will assign the incident to the next available Support Consultant.

- **Internet Email (Non ~ web based form)** – Customers may report a problem or submit a question via an Inter-net Email message addressed to productsupport@planview.com. These email messages are received by the Customer Support dispatcher who will forward the requests to a Support Consultant.

### Prioritization of Requests

PlanView, Inc. assigns a priority to each request submitted by customers. As PlanView, Inc. does not possess unlimited resources, we rely on the priority assigned to each request as a means of determining the order in which to act upon requests. These priority classifications are described in the table below.

| Priority Assigned | Interpretation |
|---|---|
| 1. (Urgent: Drop Everything) | Down Production System. Critical user(s) or components are not functional. Business / Decision-making is affected. |
| 2. (High: Do ASAP) | Impaired Production System. Critical user(s) are degraded. Business / Decision-making is affected. |
| 3. (Medium: Do it soon) | Non – critical user(s) or components are not functional or degraded. Business / Decision-making is NOT affected. |
| 4. (Low: When time permits) | Little or no impact. Cosmetic problem or cosmetic enhancement. |

### Response Policy

PlanView Customer Support makes every effort to meet the following targets when responding to requests from customers. In certain cases, on-site assistance can be arranged if the customer's request is deemed to require an on-site visit to help in the research and investigation of the request.

| Priority of Request | Response (Call Back) Time | Resolution Time |
|---|---|---|
| 1 | Within 1 hour | Within 48 hours |
| 2 | Within 4 hours | Within 1 month |
| 3 | Within 8 hours | In the next software release |
| 4 | Within 24 hours | Time Permitting |

PlanView Customer Support makes special efforts to support Consultants in the field by responding to any and all requests from Consultants in the field within 1 hour.

GALILEO AGREEMENT #US993514-EH

# EXHIBIT D

## PlanView System Administrator Course

### Objective

This is a one-day course designed to provide an in-depth understanding of the System Administrator role supporting the PlanView™ suite of products. It is an extremely interactive, hands-on course usually done in an office environment that includes a combination of lecture time and walk through activities. This course moves at a fast pace and assumes a strong understanding of the fundamentals taught in the PlanView Planner Essentials Course.

### Pre-Requisites

This class is provided with the assumption that all attendees have successfully completed the PlanView Planner Essentials course. It is recommended that the trainee take this course directly after the Planner Essentials Course and prior to attending the Planner Expanded Course. It is also expected that each attendee possess a general knowledge of project management concepts and user level knowledge of Microsoft Windows™ operating system and Microsoft Windows™ based applications.

### Contents

This course covers the following topics:
- Create Database Structures and Joins
- Create User Ids and Passwords
- Understand and Configure User Classes
- Manage Security and Multi User Access through Grants
- Create and Manage Calendars for Work and Resources
- Enter Systems Options and Cut-Off Date
- Create Time Periods and SnapShot Periods
- Understand and Run Database Checks and Fixes
- View and Update Data Dictionaries
- Perform Database Loads and Unloads
- Execute Simple SQL Statements
- Connect, Disconnect, and Unlock Users
- Understand Functionality of Progressing Engine and Job Server (if applicable)
- Troubleshooting General Questions

### Target Audience

This course is intended for individuals who will be responsible for the day-to-day management of the PlanView™ application software including setting up and configuring new users, managing and progressing the database, and troubleshooting general questions. It is recommended that class size not exceed three attendees.

## PlanView Expanded Course

### Objective

This is a two-day course designed to provide an advanced understanding of Planner functionality. It focuses more on estimating and re-planning projects than the Planner Essentials course. It is an interactive, hands on course that includes a combination of lecture time, class walk through sessions and individual exercises. This course moves at a faster pace than the Planner Essentials course and assumes a strong understanding of the fundamentals taught in that course.

### Pre-Requisites

This class is provided with the assumption that all attendees have successfully completed the PlanView Planner Essentials course. It is recommended that the trainee work in the planner for approximately two weeks to apply the lessons taught during the Planner Essentials course prior to attending this course. It is also expected that each attendee possess a general knowledge of project management concepts and user level knowledge of Microsoft Windows™ operating system and Microsoft Windows™ based applications.

### Contents

This course covers the following topics:

- Review concepts covered in Planner Essentials course, including plan and view definition
- Granting Plans
- Estimating work dates
- Project Templates
- Introduction to the Resource Search Engine
- Child dates and Batch Dates
- Child Allocations
- Optimization of Resource Schedule
- Logical Constraints
- Baselines
- "What-If" scenarios
- Progressing
- Service Requests

### Target Audience

This course is intended for individuals who are interested in the more advanced features of PlanView; such as automated optimization of resource schedules, testing scenarios of possible planning solutions prior to activating those solutions in your project plan and interpreting the results of time sheet integration. It is recommended that class size not exceed twelve attendees.

GALILEO AGREEMENT #US993514-EH

## PlanView Essentials Course

### Objective

This is a one day course designed to provide an introductory understanding of Planner functionality. Students will leave the course with an understanding of the PlanView work management model, the ability to add simple projects and the ability to assign resources. It is an interactive, hands on course that includes a combination of lecture time, class walk through sessions and individual exercises.

### Pre-Requisites

This class is provided with the assumption that all attendees have an understanding of project management concepts. It is also expected that each attendee possess a user level knowledge of Microsoft Windows™ operating system and Microsoft Windows™ based applications.

### Contents

This course covers the following topics:

- Understanding of the PlanView Work Management Model
- Entering new projects
- Setting Schedule dates
- Assigning Resources
- Understanding Plans and Views
- Working with the view
- Optimization of resource schedules
- Generating basic reports

### Target Audience

This course is intended for individuals who will be using the basic Planner functionality described above. This functionality will provide user's the ability to enter new projects and schedule work and resources to those projects. Such users are encouraged to apply the lessons of this course within one week of completing the course. This helps to ensure re-enforcement of the fundamentals. Individuals who will not be using the PlanView application immediately following the course should attend a course closer to the time the will begin use of the system. It is recommended that class size not exceed twelve attendees.

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**DOCKETED**
MAR 8 2001

## I. (a) PLAINTIFFS

PLANVIEW, INC.

## DEFENDANTS

GALILEO INTERNATIONAL, L.L.C.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Williamson
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**01C 1621**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Butler, Rubin, Saltarelli & Boyd
1800 Three First National Plaza
70 West Madison Street
Chicago, Illinois 60602 (312) 444-9660

ATTORNEYS (IF KNOWN)

**JUDGE MANNING MAGISTRATE JUDGE NOLAN**

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                        AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Diversity suit brought pursuant to 28 U.S.C. §1334 as a result of defendant's failure to pay for software and services provided by plaintiff, as well as defendant's disclosure of confidential information in violation of confidentiality provision in contract.

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**
In excess of $75,000.00

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ YES ☐ NO

## VIII.    This case

☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE
02/07/01

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

In the Matter of

PLANVIEW, INC.,                    )
                Plaintiff,    )
                           )

    v.                            )    Case Number:
                           )

GALILEO INTERNATIONAL, L.L.C.,      )
                Defendant.    )

**01C 1621**

**JUDGE MANNING**

**MAGISTRATE JUDGE NOLAN**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

DOCKETED
MAR 8 2001

Plaintiff, Planview, Inc.

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Patrick J. Lamb | NAME Catherine E. Lamsens |
| FIRM Butler Rubin Saltarelli & Boyd | FIRM Butler Rubin Saltarelli & Boyd |
| STREET ADDRESS 70 West Madison Street, Suite 1800 | STREET ADDRESS 70 West Madison Street, Suite 1800 |
| CITY/STATE/ZIP Chicago, Illinois 60602 | CITY/STATE/ZIP Chicago, Illinois 60602 |
| TELEPHONE NUMBER (312) 444-9660 | TELEPHONE NUMBER (312) 444-9660 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6182882 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6237505 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☒ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Austin P. Tighe, Jr. | NAME |
| FIRM Brobeck, Phleger & Harrison | FIRM |
| STREET ADDRESS 4801 Plaza on the lake | STREET ADDRESS |
| CITY/STATE/ZIP Austin, Texas 78746 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (512) 330-4180 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6227185 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☒ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☒ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |